UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TC REINER,

               Plaintiff,

v.

THOMAS CANALE,

               Defendant.

_____/

Case No. 16-11728

Paul D. Borman
United States District Judge

Patricia T. Morris
United States Magistrate Judge

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff TC Reiner first brought this copyright suit, alleging both infringement and wrongful removal of copyright information, against Saginaw Valley State University ("**SVSU**"), the Saginaw Valley State University Board of Control ("**SVSU Board**"), a former SVSU student, and an initially unnamed SVSU professor. The first three of those defendants have since been dismissed, and the professor has since been identified as Defendant Thomas Canale ("**Defendant**").

Now before the Court is Defendant Canale's Motion for Judgment on the Pleadings. Defendant advances two potential grounds for dismissal of this action: (1) untimeliness, because he was not named as a defendant until after the limitations period had expired, and the amended pleading adding him as a party does not relate back to the date of the earlier complaint; and (2) immunity, on the assertion that Defendant has qualified immunity in his individual capacity, and Eleventh

Amendment immunity in his official capacity. Both arguments have merit, and the Court will therefore grant Defendant's Motion for Judgment on the Pleadings.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff is a professional fashion and fine-art photographer. (ECF No. 32, 2d Am. Compl. ¶ 3.) He is the creator of the work at issue in this lawsuit (the "**Work**"): a photograph of a seated woman entitled *Nikki*. (2d Am. Compl. ¶ 11; Ex. 1, Photograph entitled "*Nikki*".) He also owns a copyright in the Work, which was registered in 2004. (2d Am. Compl. ¶ 12-13; Ex. 2, Copyright Catalog Entry.)

Defendant is a Professor of Art at SVSU, and held that position during all times relevant to this lawsuit. (2d Am. Compl. ¶ 4; ECF No. 39, Answer ¶ 4.)

On or around April 28, 2014, Plaintiff learned that the Work had been included in materials distributed by SVSU to its students. (Am. Compl. ¶ 15.) Plaintiff alleges that Defendant copied and distributed the Work to his students, and alleges on information and belief that at least one student used the Work in designing an advertisement for a domestic violence shelter as part of a class assignment.[1] (2d Am. Compl. ¶¶ 5, 16; Ex. 3, Advertisement.) Plaintiff further alleges that Defendant encourages students to use works created in class or for class assignments as a way

_____

[1] That student was originally named as a defendant, as were SVSU and the SVSU Board. (ECF No. 16, Am. Compl.) Plaintiff subsequently agreed to dismiss these three defendants (*see* ECF Nos. 29, 34), leaving only Defendant Canale in the action.

of promoting themselves to potential employers, and that at least the one student (but possibly others) included the work along among materials provided to potential employers. (2d Am. Compl. ¶¶ 6, 18.)

Defendant did not have or obtain a license or permission to use the Work. (2d Am. Compl. ¶ 20.) At no point were students advised to seek permission from Plaintiff to use the Work, and the Work as provided to students did not contain copyright information. (2d Am. Compl. ¶¶ 19, 26.) While SVSU maintains policies regarding the use of copyrighted material, Plaintiff alleges, those policies do not require strict adherence, nor do they require instructors to educate their students on either the copyright policies themselves or on applicable copyright laws and regulations. (2d Am. Compl. ¶ 21; Ex. 4, Copyright Policy.)

In a letter dated August 18, 2015, Plaintiff (through an attorney) notified SVSU that its use of the Work violated federal copyright law, and demanded that SVSU cease and desist from further use of the Work. SVSU denied violating any copyright law. (Am. Compl. ¶¶ 22-23.)

Plaintiff alleges that "[b]y failing to obtain a license for the Work or other works[2] by [Plaintiff] and allowing students access to and use of [such works], both inside and outside of the school setting, Defendant has profited from the name,

_____

[2] The Second Amended Complaint does not specifically allege infringement of any copyrights besides that of the Work, nor does it identify any other work by Plaintiff that Defendant allegedly made unauthorized use of.

reputation and signature image of [Plaintiff]." (2d Am. Compl. ¶ 27.) Plaintiff alleges that he "has sustained and will continue to sustain substantial injury, loss and damage to his ownership rights in The Work." (2d Am. Compl. ¶ 28.)

## B.     Relevant Procedural History

Plaintiff first filed suit on May 16, 2016 against SVSU and the SVSU Board of Control ("**SVSU Board**") only. (ECF No. 1, Compl.) The original Complaint asserted two claims for copyright infringement under the Copyright Act, 17 U.S.C. §§ 106 and 501. (Id. ¶¶ 27-42.)

The following November, Magistrate Judge Patricia T. Morris granted Plaintiff leave to amend his complaint, and Plaintiff added two defendants to the action: the student whom Plaintiff alleges used the Work in a class assignment, and the professor who taught the class. (ECF No. 16, Am. Compl.) In the Amended Complaint, the professor—now identified as Defendant Canale—was referred to as "Jane Doe." (Am. Compl. at 2, Pg ID 193.)

A few days after Plaintiff filed his Amended Complaint, SVSU and SVSU Board moved to dismiss the Amended Complaint (to the extent that it asserted claims against SVSU and the SVSU Board) on Eleventh Amendment grounds. The parties fully briefed that motion.[3] (ECF Nos. 17, 19, 20.) At the May 19, 2017 hearing on

---

[3] After the parties had briefed the motion but before a hearing was held, the Court certified to the United States Attorney General that the constitutionality of a federal statute—the Copyright Remedy Clarification Act ("**CRCA**"), 17 U.S.C. § 511(a)—

4

the Motion, however, the parties agreed on the record that SVSU and SVSU Board should be dismissed as Defendants, and the Court entered an Order dismissing SVSU and SVSU Board from the action the same day. (ECF No. 29.)

On July 7, 2017, Plaintiff filed his Second Amended Complaint, which is pled against Defendant Canale only, and which is now the operative complaint in this case. (ECF No. 32, 2d Am. Compl.) The Second Amended Complaint asserts two claims: one claim of copyright infringement under the Copyright Act, 17 U.S.C. §§ 106 and 501 (Count I); and one claim of wrongful removal of copyright information under the Digital Millennium Copyright Act, 17 U.S.C. § 1202 (Count II). (2d Am. Compl. ¶¶ 29-44.) Four days later, Plaintiff stipulated to dismiss the student defendant, leaving Canale as the sole defendant in the action. (ECF No. 34.)

On September 15, 2017, Defendant filed the instant Motion for Judgment on the Pleadings. (ECF No. 40, Pl.'s Mot.) Plaintiff did not file a timely response, and sought the Court's leave on October 27 to file a late response. (ECF No. 43.) The Court granted Plaintiff leave to file a late response (ECF No. 47), which Plaintiff did on November 7 (ECF No. 48, Pl.'s Resp.). Defendant filed a Reply the following day. (ECF No. 49, Def.'s Reply.)

The Court conducted a hearing on Defendant's Motion for Judgment on the

---

had been drawn into question, as required by 28 U.S.C. § 2403(a) and Federal Rule of Civil Procedure 5.1(b). (ECF No. 24.) The United States declined to intervene in this matter. (ECF No. 27.)

Pleadings on Wednesday, November 22, 2017, and now issues the following ruling.

## II. STANDARD OF REVIEW

"Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same de novo standard as motions to dismiss pursuant to Rule 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (citing *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005)). "[T]he legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same . . . ." *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007).

Thus, Rule 12(c), like Rule 12(b)(6), allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The

court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted).

In other words, a plaintiff must provide more than "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. To survive a Rule 12(c) motion for judgment on the pleadings or a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) ("Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings."). Courts have carved out a narrow exception to this rule, however: a district court ruling on a Rule 12(b)(6) motion "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the

record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001)).

## III.    DISCUSSION

Defendant advances two lines of argument in his Motion for Judgment on the Pleadings. First, he argues that Plaintiff's claims are time-barred, since amended pleadings naming previously unnamed defendants (commonly known as "Doe defendants") do not relate back to the date of the original pleading under Federal Rule of Civil Procedure 15(c), and Defendant Canale was not named as a party to this action until after the applicable three-year limitations period expired. Second, Defendant argues in the alternative that he is entitled to qualified immunity insofar as he is being sued in his individual capacity, and Eleventh Amendment immunity insofar as he is being sued as a state employee.[4]

As discussed in detail below, Plaintiff's claims are indeed time-barred under the governing statute of limitations. Even if they were not, Defendant would be entitled to both forms of immunity that he invokes. Accordingly, the Court will grant Defendant's Motion for Judgment on the Pleadings.

---

[4] Defendant also contends that Plaintiff has not pled a continuing violation of law as is required to justify injunctive relief, but Plaintiff clarifies in his Response that he is "no longer pursuing his claim for injunctive relief." (Pl.'s Resp. at Pg ID 703.)

**A.**    **Plaintiff's claims are time-barred.**

As a threshold matter, Defendant argues that this action is barred by the three-year limitations period that applies to both of Plaintiff's claims.

Both claims arise under Title 17 of the United States Code: his copyright infringement claim is asserted under 17 U.S.C. §§ 106 and 501, and his wrongful removal of copyright information claim is asserted under 17 U.S.C. § 1202. Civil actions that arise under Title 17, which governs copyrights generally, are subject to a three-year statute of limitations. *See* 17 U.S.C. § 507(b) (providing that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued"). "A copyright-infringement claim accrues when a plaintiff knows of the potential violation or is chargeable with such knowledge." *Gomba Music Inc. v. Avant*, 225 F. Supp. 3d 627, 640 (E.D. Mich. 2016) (internal quotation marks omitted) (quoting *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007)).

It was in the Second Amended Complaint that Plaintiff named Canale as the defendant who had been previously identified as "Jane Doe" in the initial pleadings. The Second Amended Complaint was filed on July 7, 2017—more than three years after Plaintiff alleges he became aware of the alleged copyright violations on April 28, 2014. (*See* 2d Am. Compl. ¶ 15.) There is no apparent dispute that for this reason, the Second Amended Complaint must relate back to the date of an earlier pleading

that was filed within 17 U.S.C. § 507(b)'s limitations period for the claims against Defendant Canale to be timely. And although there is some conflicting case law in the Sixth Circuit on this issue, the clear weight of authority compels the conclusion that the Second Amended Complaint does not relate back in this way.

Amendment of pleadings in federal civil actions is governed by Federal Rule of Civil Procedure 15. Rule 15(c)(1) provides for three ways in which an amended pleading may relate back:

> An amendment to a pleading relates back to the date of the original pleading when:
>> (A) the law that provides the applicable statute of limitations allows relation back;
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint,[5] the party to be brought in by amendment:
>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

---

[5] Federal Rule of Civil Procedure 4(m) relevantly provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

Fed. R. Civ. P. 15(c)(1).

The statute of limitations in this case, *see* 17 U.S.C. § 507(b), has no relation-back provision, so Rule 15(c)(1)(A) is of no help to Plaintiff. Additionally, Sixth Circuit precedent is clear that "Rule 15(c)(1)(B) allows relation back of an amendment asserting a 'claim or defense,' but it does not authorize the relation back of an amendment adding a new *party*." *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) (emphasis in original) (internal quotation marks omitted) (quoting *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir. 1991)). The Court finds (and the parties agree) that the only relevant subprovision here is Rule 15(c)(1)(C), which governs amendments that "change[] the party or the naming of the party against whom a claim is asserted."

Rule 15(c)(1)(C) has one prerequisite: it only applies if "Rule 15(c)(1)(B) is satisfied." Thus, an amendment changing a party or a party's name will only relate back under Rule 15(c)(1)(C) if the allegations in the amended pleading arise from the same "conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). This requirement is met here because the claims in the Second Amended Complaint are based on the same factual allegations as were set forth in the earlier versions of the complaint. *See Norfolk Cty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 877 F.3d 687, 694 (6th Cir. 2017) ("As interpreted by our court, [Rule 15(c)(1)(B)'s] standard is met if the original and

amended complaints allege the same 'general conduct' and 'general wrong.'")
(quoting *Durand v. Hanover Ins. Grp., Inc.*, 806 F.3d 367, 374 (6th Cir. 2015)).

To survive judgment on the pleadings on the basis of Rule 15(c)(1)(C), then, Plaintiff must overcome two obstacles imposed by that Rule. He must satisfy the "notice" prong of Rule 15(c)(1)(C)(i) by showing that Defendant received notice within 90 days of the filing of the original complaint, such that Defendant will not be prejudiced in defending the action. He must also satisfy the "mistaken identity" prong in Rule 15(c)(1)(C)(ii) by showing that Defendant "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity." As described below, there is a split within the Sixth Circuit regarding the mistaken identity prong, but the weight of authority strongly favors the proposition that the naming of Doe defendants in a complaint is not a "mistake concerning the proper party's identity" under Rule 15(c)(1)(C)(ii).

The split is based on two Sixth Circuit cases decided a decade apart. *Berndt v. State of Tennessee*, 796 F.2d 879 (6th Cir. 1986), involved a *pro se* civil rights action seeking damages for injuries incurred by the plaintiff while in the custody of a state mental health institution. In *Berndt*, the Sixth Circuit upheld the district court's determination that the two named defendants in the action—the institution and the state of Tennessee itself—were immune from suit on Eleventh Amendment grounds. *See id.* at 881-82. At the same time, the court found that the complaint also

alleged illegal conduct by the institution's employees without identifying them by name. Noting that the Eleventh Amendment did not bar the action against those employees in their individual capacities, and highlighting the plaintiff's *pro se* status as well as the gravity of the allegations, the court remanded the case to the district court to allow the plaintiff to amend his complaint by naming the staff members as defendants. *See id.* at 882-83. The Sixth Circuit acknowledged that any such amendments would likely be outside of the statute of limitations, and set forth guidance for the district court's determination on whether an amendment would relate back under Rule 15(c).[6] *See id.* at 883-84. The court explained that constructive rather than actual notice to the new defendants would be sufficient to satisfy the notice prong of Rule 15(c), and that the new defendants' status as officials of the original defendants could itself be enough to impute notice to them; as to the mistaken identity prong, the court merely stated that it was "a patently factual inquiry . . . left to the district court." *Id.* The court then closed by cautioning that while these principles "are appropriate considerations for the district court, they are only guides." *Id.* at 884. In short, the *Berndt* court did not analyze the mistaken identity

---

[6] The earlier version of Rule 15(c) analyzed by the *Berndt* court was essentially identical to the version that is in effect today. The only substantial difference is that under the old Rule 15(c), the new party must have had notice of the action within the limitations period that governed the action, rather than within the 90-day period set forth in Federal Rule of Civil Procedure 4(m), as Rule 15(c) now requires. *See Berndt*, 796 F.2d at 883.

prong of Rule 15(c)(1)(C)(ii), but it did make clear that naming Doe defendants after the expiration of the applicable limitations period could satisfy it.

Ten years later, in *Cox v. Treadway*, 75 F.3d 230 (6th Cir. 1996), the Sixth Circuit ruled on an excessive-force action brought under 42 U.S.C. § 1983, in which the plaintiff had included four "unnamed police officers" among the defendants in his original complaint, and subsequently named them after the statute of limitations had run. *See id.* at 239-40. The court concluded that the amended complaint did not relate back, explaining that

> [t]he naming of "unknown police officers" in the original complaint does not save the pleading. Substituting a named defendant for a "John Doe" defendant is considered a change in parties, not a mere substitution of parties. Therefore, the requirements of Fed.R.Civ.P. 15(c) must be met in order for the amendment adding the named defendant to relate back to the filing of the original complaint.

*Cox*, 75 F.3d at 240. The requirements of Rule 15(c) were not met in the case at bar, the court then reasoned, because "Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement of [Rule 15(c)]." *Id.* (citing *In re Kent Holland Die Casting & Plating, Inc.,* 928 F.2d 1448, 1449–50 (6th Cir. 1991) and *Marlowe v. Fisher Body,* 489 F.2d 1057, 1064 (6th Cir. 1973)). Finally, the *Cox* court held that the plaintiffs "cannot benefit from the 'imputed knowledge' doctrine of [*Berndt*] because the City of Louisville was never named as

a defendant in this case. In *Berndt*, knowledge was imputed to the newly added defendants because they were officials of the originally named defendant, the State of Tennessee." *Cox*, 75 F.3d at 240.

Thus in *Berndt*, on the one hand, the Sixth Circuit allowed for the possibility that an amendment naming Doe defendants after the limitations period expires can relate back under Rule 15(c). Then, on the other hand, the Sixth Circuit later held in *Cox* "that amendments outside the limitations period must meet the requirements of [Rule] 15(c), [and] also held that the 'mistaken identity' requirement of the Rule cannot be met where a named party is substituted for an unknown, as opposed to a mistaken, party." *Daily v. Monte*, 26 F. Supp. 2d 984, 986 (E.D. Mich. 1998). Several district courts over the years have characterized *Berndt* and *Cox* as creating a "split in authority regarding the proper interpretation of the Rule." *Daily*, 26 F. Supp. 2d at 986; *see also Clark v. Oakland Cty.*, No. 08-14824, 2010 WL 2891712, at *8 (E.D. Mich. July 22, 2010) ("This arguable split within the Sixth Circuit is representative of the varying outcomes other circuits have arrived at on the issue of 'John Doe' defendants and Rule 15(c)."); *Marksbury v. Elder*, No. 5:09-CV-24-REW, 2011 WL 1832883, at *7 n.10 (E.D. Ky. May 12, 2011) (noting that "[s]everal courts have suggested a possible Sixth Circuit split regarding *Cox* and Rule 15(c)" while characterizing the relevant language in *Berndt* as dicta).

*Daily*, one of the district court decisions that recognized the split, concluded

two years after *Cox* was decided that *Cox* "represent[ed] a departure from previous interpretations of Rule 15(c)," and declined to follow it, allowing an amendment naming Doe defendants to relate back. *See Daily*, 26 F. Supp. 2d at 985-88. But importantly, the Sixth Circuit has consistently cited *Cox* in unpublished cases since the very year *Cox* was decided to hold that naming previously unnamed defendants does not satisfy the mistaken identity prong of Rule 15(c)(1)(C)(ii) because a lack of knowledge as to the identity of a defendant does not constitute a "mistake" within the meaning of the Rule. *See, e.g., Wiggins v. Kimberly-Clark Corp.*, 641 F. App'x 545, 549 (6th Cir. 2016) (holding that even if the plaintiff had established that the Doe defendants "'knew or should have known' that he would bring the claims against them, he failed to establish that his lack of knowledge of their identities was due to a 'mistake' as the Rule requires"); *Brown v. Cuyahoga Cty., Ohio*, 517 F. App'x 431, 433–34 (6th Cir. 2013) (explaining that the Sixth Circuit "previously held [in *Cox*] that an absence of knowledge is not a mistake, as required by Rule 15(c)(1)(C)(ii)," and further noting that "[t]he Supreme Court recently elucidated the meaning of the word 'mistake' as used in Rule 15, giving the term its plain meaning: '[a]n error, misconception, or misunderstanding; an erroneous belief'") (alteration in original) (quoting *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010)); *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) ("The Rule allows relation back for the mistaken identification of defendants, not for defendants

16

to be named later through 'John Doe,' 'Unknown Defendants' or other missing appellations. Our approach is consistent with the holdings of every other circuit on this issue.") (collecting cases); *Moore v. Tennessee*, 267 F. App'x 450, 455 (6th Cir. 2008) ("[A] plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a 'mistake concerning the party's identity' within the meaning of Rule 15(c). Nor are we alone in so holding—our court's precedent comports with no fewer than seven of our sister circuits.") (citation omitted) (collecting cases); *Force v. City of Memphis*, 101 F.3d 702, at *3 (6th Cir. 1996) (table) ("We have recently held that [the mistaken identity prong] is not satisfied where the caption of an original complaint refers to 'unknown police officers' and, after the expiration of the applicable limitations period, an amended complaint specifically names those officers.") (citing *Cox*, 75 F.3d at 240).

Courts in this District have relied on these unpublished Sixth Circuit decisions to reach the same outcome. *See, e.g., Finnerty v. Wireless Retail, Inc.*, 624 F. Supp. 2d 642, 654–55 (E.D. Mich. 2009) ("In this court, a plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a "mistake concerning the party's identity" within the meaning of Rule 15(c).") (internal quotation marks omitted) (quoting *Moore*, 267 F. App'x at 455); *Robinson v. Genesee Cty. Sheriff's Dep't*, No. 16-CV-13805, 2017 WL 1105060, at *5 (E.D. Mich. Mar. 24, 2017) (citing *Cox* and *Moore* for the proposition that "amendments

identifying previously unknown police officers do not satisfy the 'mistaken identity' requirement of [Rule 15(c)]").  Both of these district court decisions relied in part on the unpublished Sixth Circuit case *Moore v. Tennessee*, 267 F. App'x 450 (6th Cir. 2008). *Moore* was discussed in detail in a 2010 opinion, issued by a coordinate court in this District, which articulated a line of reasoning that this Court considers to be especially relevant to this case. *See generally Clark v. Oakland Cty.*, No. 08-14824, 2010 WL 2891712 (E.D. Mich. July 22, 2010). In *Clark*, the court acknowledged the *Berndt/Cox* conflict, but ultimately determined that *Moore* strongly supported the conclusion that naming Doe defendants does not satisfy Rule 15(c)'s mistaken identity prong. In this regard, the court recognized that

> *Moore*, as an unpublished opinion of the Sixth Circuit, is not necessarily binding on this Court. *Moore* is, however, highly persuasive authority for how the Sixth Circuit would so rule if the issue of "John Doe" defendants and Rule 15(c) relation back were to be reconsidered. At the very least, the *Moore* panel deemed *Cox* still deserving of precedential credence. Given *Moore*'s reaffirmation of the continuing viability of *Cox*'s central holding, this Court defers to the sound judgment of the Sixth Circuit in deciding *Moore*.

*Clark*, 2010 WL 2891712, at *9.

The court's reasoning in *Clark* is even more pertinent today, since the Sixth Circuit has rendered three more unpublished decisions in the years since *Clark* that support the same proposition: *Wiggins*, *Brown*, and *Smith* (all cited *supra*). *Berndt*, by contrast, has not had the same viability as *Cox*, and the Sixth Circuit has not cited

it in a case that squarely addresses this issue since *Moore* was decided in 2008.[7] In the final analysis, the weight of authority clearly favors the proposition, embodied in *Cox*, *Moore*, and *Clark*, that asserting claims against Doe defendants in an initial complaint will not later be found to be a "mistake concerning the proper party's identity" under Rule 15(c)(1)(C)(ii).

In arguing that his addition of Defendant Canale should in fact relate back under Rule 15(c), Plaintiff relies chiefly on *Berndt*, but for the reasons set forth above, *Berndt*'s precedential value is undermined by *Cox* and the various cases that have followed it. Plaintiff also cites two other Sixth Circuit cases for the general proposition that "a plaintiff may sue an unnamed 'John Doe' defendant as a placeholder until the plaintiff learns the identity of the 'John Doe' Defendant" (Pl.'s Resp. at 3, Pg ID 707), but both cases are unavailing to him. In *Brown v. Owens*

---

[7] In fact, this Court is aware of only one (unpublished) Sixth Circuit decision in the last 20 years that seems to directly adopt *Berndt*'s interpretation of Rule 15(c) by reversing a district court's denial of a plaintiff's attempt to amend a complaint outside the statute of limitations, based on the possibility that the plaintiff's naming a Doe defendant in the original complaint may have constituted a "mistake concerning the proper party's identity." *See Friedmann v. Campbell*, 202 F.3d 268 (6th Cir. 1999) (unpublished) (reversing the district court's denial of a *pro se* plaintiff's request to amend his complaint to specifically name a Doe defendant because the limitations period had run, and directing the district court to consider on remand whether the new defendant had constructive notice under *Berndt* without analyzing the issue of mistaken identity). Insofar as *Friedmann* falls on the *Berndt* side of the intra-circuit conflict, it is strongly outweighed by the numerous and more recent Sixth Circuit and district court decisions discussed above, all of which have cited *Cox* for the proposition that the naming of Doe defendants is not a "mistake concerning the proper party's identity" under Fed. R. Civ. P. 15(c)(1)(C)(ii).

*Corning Inv. Review Comm.*, 622 F.3d 564 (6th Cir. 2010), the court only mentioned a plaintiff's ability to file suit against "John Doe defendants" in order to establish that a plaintiff need not have actual knowledge of the specific identity of all defendants in an action for the statute of limitations to start running. *See id.* at 572-73. In *Hall v. City of Detroit*, 2016 U.S. App. LEXIS 21175 (CA 6, 2016), the Sixth Circuit upheld the district court's dismissal of a *pro se* civil rights action to the extent that it was asserted against a municipal defendant, but reversed the district court's dismissal as to three unnamed police officer defendants. The court in *Hall* noted that the plaintiff's claims may have been time-barred—and also pointed out that while the plaintiff was entitled to bring suit against Doe defendants, he could not do so in order to circumvent a statute of limitations—but ultimately declined to rule on whether the lawsuit was timely in first instance because the district court had not itself addressed the issue. (Pl.'s Resp. Ex. 3, *Hall v. City of Detroit* at 2-3, Pg ID 729-30.) Neither of these two cases touches the issue of whether a plaintiff's use of a Doe defendant in a complaint is a "mistake concerning the proper party's identity" under Rule 15(c), so neither is relevant here.

Lastly, the parties argue fairly extensively in their briefs over when exactly Plaintiff became aware that Defendant Canale was the proper defendant in this action. Plaintiff maintains that it was not until "June or July of this year." (Pl.'s Resp. at 3, Pg ID 698.) Defendant counters that Plaintiff had notice of the fact as early as

June 2014, and attaches as an exhibit to his Reply an email exchange between a representative of Plaintiff's and the former student defendant, in which the former student defendant identified "Tom Canel" as the instructor of the design class in which she allegedly made use of the Work. (*See* Def.'s Reply at 2-3, Pg ID 743-44; Ex. A, June 2014 Emails.)

This issue is outside the scope of the instant Motion for three distinct reasons. First and most importantly, the email exchange attached as an exhibit to Defendant's Reply is extrinsic to the pleadings, and for that reason this Court cannot consider it without converting the instant Motion for Judgment on the Pleadings to a summary judgment motion. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Conversion of the instant Motion under Rule 12(d) is unnecessary because, for the reasons that follow, the precise time at which Plaintiff learned of Defendant's identity is not ultimately a relevant issue. The Court excludes this evidence accordingly.

Second, the binding precedent and ample persuasive authority discussed *supra* establishes that regardless of when Plaintiff learned of Defendant Canale's existence, his claims are barred because Defendant Canale was added as a defendant

after the statute of limitations had run, and Plaintiff's earlier use of a Doe defendant does not constitute "a mistake concerning the proper party's identity" as required for the amendment to relate back under Rule 15(c).

Finally, the Supreme Court has held that as a general rule, "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, *not on the amending party's knowledge or its timeliness in seeking to amend the pleading*." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010) (emphasis added). Even if Sixth Circuit case law did not foreclose any argument that this matter involves "a mistake concerning the proper party's identity" under Rule 15(c)(1)(C)(ii), the time at which Plaintiff learned of Defendant's identity would be irrelevant for this independent reason.

Although there is arguably conflicting Sixth Circuit case law on the issue of whether an initial lack of knowledge as to the identity of a defendant constitutes a "mistake" under Rule 15(c)(1)(c)(ii), the weight of authority clearly favors a finding that it does not. Therefore, Plaintiff's addition of Defendant Canale as a defendant in this action does not relate back to the original pleadings under Rule 15(c), and both of Plaintiff's claims in this action are time-barred.

**B.      Defendant is immune from suit.**

Even if both of Plaintiff's claims were not untimely, Defendant would be entitled to judgment on the pleadings on immunity grounds: qualified immunity to

the extent that he is sued in his individual capacity, and Eleventh Amendment immunity to the extent that he is sued in his official capacity.

1. **Defendant is entitled to qualified immunity to the extent that he is sued in his individual capacity.**

   a) **Background law**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The qualified immunity doctrine requires the court to determine: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* at 232 (citations omitted) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Clemente v. Vaslo,* 679 F.3d 482, 490 (6th Cir. 2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). The Sixth Circuit has emphasized

that "this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. . . . [T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Clemente,* 679 F.3d at 490 (internal citations and quotation marks omitted).

The plaintiff "bear[s] the burden of showing the claimed right was clearly established." *Everson v. Leis,* 556 F.3d 484, 494 (6th Cir. 2009). The plaintiff need not cite "'a case directly on point' [to demonstrate] that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Kent v. Oakland Cty.*, 810 F.3d 384, 395 (6th Cir. 2016) (quoting *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013)). The inquiry requires the plaintiff to point to "controlling authority" or "a robust consensus of cases of persuasive authority" in order to show that the right was clearly established. *Hidden Village, LLC v. City of Lakewood, Ohio,* 734 F.3d 519, 529 (6th Cir. 2013).

### b) Threshold issues

Two questions warrant discussion before the merits of Defendant's qualified immunity argument can be properly addressed: whether qualified immunity applies in the copyright context; and if so, whether Defendant, a professor at a public university, can invoke it as a "government official." The case law on these questions compels an affirmative answer to both.

Defendant cites three federal district court decisions from other circuits that have found the doctrine of qualified immunity to be applicable in the copyright context. (*See* Def.'s Mot. at 8-9, Pg ID 535-36 (citing *Issaenko v Univ of Minnesota*, 57 F. Supp. 3d 985, 1012-1016 (D. Minn. 2014); *Molinelli-Freytes v Univ of Puerto Rico*, 792 F. Supp. 2d 150, 156-158 (D. P.R. 2011); and *Ass'n for Info. Media & Equip. v. Regents of the Univ. of California*, No. 2:10-CV-09378, 2012 WL 7683452, at *5-8 (C.D. Cal. Nov. 20, 2012).) At least one circuit court and three other district courts—though again, none within the Sixth Circuit—have reached the same conclusion. *See Chavez v. Arte Publico Press*, 59 F.3d 539 (5th Cir. 1995), *vacated on other grounds sub nom. Univ. of Houston v. Chavez*, 517 U.S. 1184 (1996); *Lane v. First National Bank of Boston*, 687 F. Supp. 11, 16-18 (D. Mass. 1988); *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, No. CV 16-4781, 2016 WL 9223889, at *5 (C.D. Cal. Dec. 22, 2016); *Campinha-Bacote v. Bleidt*, 2011 WL 4625394, at *3 (S.D. Tex. Oct. 3, 2011).

*Tresona Multimedia* is illustrative. In that case, the U.S. District Court for the Central District of California noted the absence of binding authority on the question of whether the qualified immunity doctrine applies to copyright law, and observed that while a handful of federal district courts have determined that it does, "none of these cases engage in actual analysis on whether qualified immunity *should* apply to copyright law, but instead simply note that other courts have done so." *Tresona*

*Multimedia*, 2016 WL 9223889, at *5. Acknowledging its own "reservations about whether the policies underlying qualified immunity are applicable to copyright infringement," *id.* at *5, the court nevertheless determined that the doctrine is applicable in the copyright context on the basis of two decisions by the U.S. Supreme Court, which together stand for the principle that "subjecting public officials to an extra layer of uncertainty—whether a federal court will find that their role in government or their governmental activities trigger the protections of qualified immunity in the first place—defeats the very policies that qualified immunity is intended to promote." *Id.* at *5-6 (citing *Anderson v. Creighton*, 483 U.S. 635 (1987) and *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). The Court finds this reasoning persuasive, and is unaware of any authority supporting the proposition that the doctrine of qualified immunity does not apply in the copyright context. For those reasons, the Court finds that the qualified immunity doctrine may apply in this case.

Plaintiff does not seem to contest that qualified immunity can apply in copyright actions generally, but he does argue that Defendant himself may not invoke it. Specifically, Plaintiff argues that unlike members of the SVSU Board (which was originally named as a defendant in this action but subsequently dismissed by Plaintiff), Defendant "has no authority over the general operation of SVSU and does not set university policies or procedures." (Pl.'s Resp. at 5, Pg ID 709.) Plaintiff does not support this argument with legal citation, and it is without

merit at any rate. The qualified immunity doctrine is not limited to high-level officials or policymakers, but broadly "serves to shield government employees from liability when performing discretionary functions in the course of their employment." *Wallin v. Norman*, 317 F.3d 558, 561 (6th Cir. 2003) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)); *see also Minick v. Metro. Gov't of Nashville, Davidson Cty., Tenn.*, 543 F. App'x 507, 509 (6th Cir. 2013) (rejecting an argument that, "without citing any authority, summarily states that qualified immunity does not protect [a hospital unit secretary] because she is not a government official"). Indeed, the Sixth Circuit as well as courts in this District have repeatedly applied the doctrine to teachers and professors at public educational institutions. *See, e.g., Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 680–81 (6th Cir. 2016) (preschool teacher); *Saylor v. Bd. of Educ. of Harlan Cty., Ky.*, 118 F.3d 507, 515–16 (6th Cir. 1997) (eighth-grade teacher); *Reardon v. Midland Cmty. Sch.*, 814 F. Supp. 2d 754, 772–74 (E.D. Mich. 2011) (high school teacher); *Min Li v. Qi Jiang*, 38 F. Supp. 3d 870, 880–81 (N.D. Ohio 2014) (professor and department head). Plaintiff has not shown that Defendant is barred from asserting qualified immunity by the nature of his position.

### c) Qualified immunity

#### i. *Copyright Act claim (Count I)*

Defendant's argument for the application of qualified immunity in this matter

is grounded in federal copyright law's "fair use" exception. Defendant has persuasively shown that the fair use doctrine is unsettled enough—particularly in the educational context—that his alleged actions did not infringe Plaintiff's clearly established statutory rights. Plaintiff cites no case law in response. This Court concludes that even if this action were not time-barred, it would not survive Defendant's Motion for Judgment on the Pleadings because Defendant is entitled to qualified immunity.

The Copyright Act of 1976 provides that "the fair use of a copyrighted work, including such use by reproduction in copies . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. The statute continues:

> In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include--
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.*

As noted, the two prongs of the qualified immunity test are (1) "whether the

facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson,* 555 U.S. at 232 (citations omitted). A court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Here, the parties focus on the "clearly established" prong. In determining whether Plaintiff has shown that the right he alleges was infringed was clearly established, the Court must

> look first to the decisions of the Supreme Court, and then to the case law of this circuit in determining whether the right claimed was clearly established when the action complained of occurred. [T]he case law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.

*Clemente,* 679 F.3d at 490 (internal citations and quotation marks omitted).

Defendant correctly asserts that the Supreme Court has yet to address the contours of "fair use" by professors and students in the educational setting. As to circuit precedent, Defendant identifies one Sixth Circuit decision and one district court decision within the Eastern District of Michigan that were on the books as of April 2014 (when Plaintiff alleges he learned of the alleged violation), and that have addressed the fair use doctrine in the educational context. Both cases involved dissemination of allegedly copyrighted materials by a commercial copying service

29

rather than an educator or university employee. *See Princeton University Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1385-91 (6th Cir. 1996) (holding that a defendant copy shop's reproduction of excerpts of copyrighted works was a commercial use that placed the burden on the defendant to show that its activities constituted fair use, and that all four statutory factors weighed against a finding that they did); *Blackwell Publ'g, Inc. v. Excel Research Grp., LLC*, 661 F. Supp. 2d 786, 792-94 (E.D. Mich. 2009) (finding that an action alleging that a copy service provider had compiled copyrighted materials from professors, and then allowed students to copy the materials on its machines for a fee, was "not seriously distinguishable" from *Princeton University Press*, and thus that the fair use doctrine did not apply). Crucially for this case, the Sixth Circuit in *Princeton University Press* expressly declined to decide whether the same activities would amount to fair use had they been undertaken by students or professors. *See Princeton University Press*, 99 F.3d at 1389 ("As to the proposition that it would be fair use for the students or professors to make their own copies, the issue is by no means free from doubt. We need not decide this question, however, for the fact is that the copying complained of here was performed on a profit-making basis by a commercial enterprise.").

Plaintiff bears the burden of showing that Defendant's alleged distribution of the Work to his students for class purposes infringed Plaintiff's clearly established statutory rights. The only case Plaintiff cites in this regard is *Princeton University*

*Press*, which he cites seemingly in order to concede that "the question of what constitutes fair use in an educational setting has not been decided in this Circuit." (Pl.'s Resp. at 5, Pg ID 709.) Plaintiff's arguments are otherwise devoid of case support. He first points out that SVSU had a copyright policy in place, and contends that Defendant, as "a professor in a field where copyrights are often an issue . . . would have known that copyrighted works are protected in general, and is assumed to have been aware of the University's copyright policy." (Pl.'s Resp. at 5, Pg ID 709.) Apart from this, Plaintiff argues that Defendant, as someone "working in the field, would have some idea of what constitutes fair use and what does not. He certainly knew, from his employer, that the way to avoid a breach of copyright is to request permission to use the work. There is no dispute that [Defendant] never did that." (Pl.'s Resp. at 5-6, Pg ID 709-10.)

There is no merit to these arguments. Beyond failing to cite any authority suggesting—let alone clearly establishing—that Defendant's use of the Work was not fair use, Plaintiff has all but conceded that his rights were not clearly established for qualified-immunity purposes by acknowledging that neither the Supreme Court nor the Sixth Circuit has addressed the fair use doctrine in the higher education context. In fact, 17 U.S.C. § 107 specifically contemplates educational use of copyrighted work as constituting fair use, and while this does not foreclose the possibility that activity like Defendant's may someday be held to be outside the

scope of the fair use doctrine, the absence of any Supreme Court or Sixth Circuit precedent on the issue undercuts Plaintiff's argument entirely.[8]

### ii. DMCA claim (Count II)

Defendant has demonstrated that he is entitled to qualified immunity, to the extent that he is sued in his individual capacity, on the copyright infringement claim asserted in Count I of the Complaint. The same is true of Plaintiff's Digital Millennium Copyright Act ("**DMCA**") claim in Count II of the Complaint.

The DMCA relevantly provides that "[n]o person shall, without the authority of the copyright owner or the law . . . intentionally remove or alter any copyright management information, knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b). The statutory text of the DMCA makes clear that any violation of the DMCA is necessarily derivative of an independent infringement of a right under Title 17 of the United States Code. As Plaintiff has failed to

---

[8] This conclusion is consistent with the only two other district court cases of which this Court is aware that have addressed qualified-immunity arguments based on the fair use doctrine. *See Tresona Multimedia*, 2016 WL 9223889, at *8 (finding, in an action involving unauthorized performance of copyrighted songs by high school show choirs, that "since teaching is explicitly listed as fair use, a public school teacher acting in his teaching capacity would be reasonable in believing" that the fair use defense applies); *Ass'n for Info. Media & Equip.*, 2012 WL 7683452, at *6 (holding that "a reasonable person would not have known" that uploading copyrighted video to an internal university network "violated any clearly established rights pursuant to copyright law because it is ambiguous whether the use was fair use under copyright law").

demonstrate that any infringement of any right of his was clearly established, Defendant is entitled to qualified immunity on Plaintiff's DMCA claim as well.

## 2. Defendant is entitled to Eleventh Amendment immunity to the extent that he is sued in his official capacity.

Plaintiff also pleads his claims against Defendant Canale in his official capacity as an employee of SVSU. In the instant Motion for Judgment on the Pleadings, Defendant argues that to the extent that he is sued in his official capacity, he is entitled to sovereign immunity under the Eleventh Amendment to the U.S. Constitution.[9] This Court agrees.

The Supreme Court has held that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. . . . This bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. 2006) (explaining that the Eleventh Amendment bars "suits in federal court when the action is 'in essence

---

[9] In this Opinion and Order, the Court uses the terms "sovereign immunity" and "Eleventh Amendment immunity" interchangeably. *See Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011) ("[T]he terms 'state sovereign immunity' and 'Eleventh Amendment immunity' are often used interchangeably to mean the same thing."); *see also Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir. 2008) (recognizing that the Third Circuit "and other courts of appeals have sometimes used the terms 'sovereign immunity' and 'Eleventh Amendment immunity' interchangeably").

one for the recovery of money from the state [and] the state is the real, substantial party in interest,' which invariably will be the case when the claimant sues a state employee in his official capacity") (quoting *Edelman v. Jordan,* 415 U.S. 651, 663 (1974); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("[T]he Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities.")

"[O]fficial capacity claims are essentially claims against the entity itself." *Frost v. Hawkins Cty. Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988) (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)). As it is undisputed that Defendant Canale was an employee of SVSU at all relevant times, any entitlement to Eleventh Amendment immunity that he has is tied to his employment relationship. For the reasons discussed below, the Court concludes that SVSU would be entitled to Eleventh Amendment immunity were it still a defendant in this action, and that that immunity extends to Defendant Canale as well.

### a) Background law

The Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although the Amendment on its face prohibits only suits brought against a state by 'Citizens of another State,' the Supreme Court has long construed the Amendment to protect

states from suits filed by their own citizens in federal court on the basis of federal question jurisdiction." *Reese v. State of Michigan*, 234 F.3d 1269, at *3 (6th Cir. 2000) (table) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) and *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

"Eleventh Amendment immunity attaches only to defendants that are the state itself or an 'arm of the State.'" *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Georgia*, 723 F.3d 640, 650 (6th Cir. 2013) (quoting *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)). The Sixth Circuit has consistently held public universities in Michigan to be arms of the state. *See Kreipke v. Wayne State Univ.*, 807 F.3d 768, 775–76 (6th Cir. 2015) (Wayne State University); *Estate of Ritter by Ritter v. Univ. of Michigan*, 851 F.2d 846, 848-51 (6th Cir. 1988) (University of Michigan); *Benzie v. W. Michigan Univ.*, 19 F. App'x 360, 361 (6th Cir. 2001) (Western Michigan University); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (noting that "a public university qualifies as an arm of the state"). The only case law clearly indicating that SVSU specifically is an arm of the state is one unpublished decision from this District was issued in 2015. *See Ross v. Bachand*, No. 14-cv-14122, 2015 WL 4644912, at *6 (E.D. Mich. Aug. 5, 2015) ("Under Michigan law, public universities such as SVSU are considered to be arms of the State."). But in view of the authorities which clearly establish that public universities in Michigan are arms of the state, and given that Plaintiff expressly did not dispute that SVSU is

an arm of the state in his brief on SVSU and the SVSU Board's previous motion to dismiss (*see* ECF No. 19 at 10, Pg ID 312), the Court finds that SVSU is an arm of the state for Eleventh Amendment purposes.

SVSU, and Defendant Canale by extension, are thus presumptively immune from suit unless one of the recognized exceptions to Eleventh Amendment immunity applies. There are three such exceptions: "First, Congress may abrogate immunity by statute where its action is a proper exercise of constitutional power . . . . Second, the [Eleventh] Amendment does not bar a suit against a state official seeking prospective injunctive relief to end a continuing violation of federal law. Finally, a state may waive Eleventh Amendment protection." *Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002) (internal citations omitted).

Only the first of these three exceptions is pertinent here. Plaintiff represented in his Response that he "is no longer pursuing his claim for injunctive relief" (Pl.'s Resp. at Pg ID 703), which takes the second exception out of play. As to the third exception, Plaintiff offers no basis for the Court to conclude that Michigan has waived its Eleventh Amendment immunity as to claims like his, and another court in this District recently determined in a different copyright suit against a Michigan public university that it has not. *See Wolf v. Oakland Univ.*, No. 15-13560, 2016 WL 7048812, at *6-7 (E.D. Mich. Dec. 5, 2016) (holding that state employees in Michigan have broad statutory immunity from tort liability "'whenever they are

engaged in the exercise or discharge of a governmental function,'" and that Michigan has not waived this immunity via the "specifically enumerated statutory exceptions to governmental immunity" set forth in Michigan's Governmental Tort Liability Act, Mich. Comp. Laws § 691.1407 *et seq.*) (quoting *Beals v. Michigan*, 497 Mich. 363, 370 (2015)).

The dispositive issue, then, is whether the first exception applies: that is, whether Congress has abrogated the states' Eleventh Amendment immunity as to the claims pled in this action. This is measured with a two-part test: "first, whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity,'; and second, whether Congress has acted 'pursuant to a valid exercise of power[.]'" *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)). The Supreme Court made clear in *Seminole Tribe* that it is only pursuant to the Fourteenth Amendment,[10] and no other provision of the Constitution, that Congress may validly abrogate state sovereign immunity. *See Seminole Tribe*, 517 U.S. at 63-66 (holding that a federal statute enacted pursuant to the Indian Commerce Clause of Article I of the Constitution could not abrogate state sovereign immunity); *see also Florida Prepaid Postsecondary Educ. Expense Bd. v.*

_____

[10] The specific constitutional provision from which Congress derives this power is the enforcement clause in Section Five of the Fourteenth Amendment, which provides that "Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5

*Coll. Sav. Bank*, 527 U.S. 627, 635–36 (1999) (invalidating a federal statute purporting to abrogate state sovereign immunity for patent infringement claims because "*Seminole Tribe* makes clear that Congress may not abrogate state sovereign immunity pursuant to its Article I powers; hence the [statute] cannot be sustained under either the Commerce Clause or the Patent Clause").

In other words, to abrogate the states' Eleventh Amendment immunity through legislation, Congress must (1) clearly express its intent to do so, and (2) do so through legislation that is a valid exercise of its powers under the Fourteenth Amendment.[11] To meet the first prong, "Congress must make its intention to abrogate state sovereign immunity 'unmistakably clear in the language of the statute.'" *Hoffman v. Connecticut Dep't of Income Maint.*, 492 U.S. 96, 101 (1989) (quoting *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985)). For a statute to satisfy the second prong of the test, Congress "must identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct." *Florida Prepaid*, 527 U.S. at 639. In this regard, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."

---

[11] The Supreme Court has carved out one narrow exception to this rule in the bankruptcy context, but it has no relevance here. *See Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 362-63 (2006) (holding that notwithstanding *Seminole Tribe*, the Bankruptcy Clause of Article I of the Constitution represents, since the date of its enactment, an implied congressional abrogation of state sovereign immunity).

*Id.* (quoting *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997)).

### b) Sovereign immunity

Although Congress has legislatively attempted to abrogate state immunity from copyright claims, the statute has been invalidated by various courts as an unconstitutional exercise of federal legislative power. Those decisions are persuasive, and no court that has addressed the issue has reached the opposite conclusion. Accordingly, this Court concludes that even if Plaintiff's claims were not untimely, they would fail because Defendant has Eleventh Amendment immunity notwithstanding Congress' attempt to abrogate that immunity by statute.

### i. *Copyright Act claim (Count I)*

Count I of the Second Amended Complaint alleges a claim for copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501. In 1990, Congress enacted a statute purporting to expressly abrogate state sovereign immunity from copyright infringement claims: the Copyright Remedy Clarification Act ("**CRCA**"), 17 U.S.C. § 511(a). The CRCA provides:

> Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court by any person, including any governmental or nongovernmental entity, for a violation of any of the exclusive rights of a copyright owner provided by sections 106 through 122, for importing copies of phonorecords in violation of section 602, or for any other violation under this title.

17 U.S.C. § 511(a).

The CRCA's text permits no doubt that Congress clearly expressed its intent to abrogate the Eleventh Amendment immunity of states against copyright claims. The key question becomes whether the CRCA was itself a valid exercise of congressional power. A substantial number of federal courts have held that it was not, and invalidated the CRCA on that basis. Among them are the Fifth and Eleventh Circuits, as well as several district courts (including at least one in this District).

The Fifth Circuit was the first to call the CRCA's constitutionality into question. In *Chavez v. Arte Publico Press*, 204 F.3d 601 (5th Cir. 2000), the Fifth Circuit interpreted the decision that the Supreme Court had recently issued in *Florida Prepaid* as requiring a court to examine three aspects of an express statutory abrogation of state sovereign immunity: "1) the nature of the injury to be remedied; 2) Congress's consideration of the adequacy of state remedies to redress the injury; and 3) the coverage of the legislation." *Chavez*, 204 F.3d at 605. Applying that framework to the CRCA in the context of a copyright lawsuit by an author against a public university, the Fifth Circuit held that the statute's legislative history did not demonstrate a pattern of state copyright infringement (as *Florida Prepaid* had suggested was required); that Congress gave little thought to state remedies at all; and that the legislature took no apparent steps to cabin the scope of the statute. *See id.* at 605-07. As the Fifth Circuit found no indication in the record that "Congress

40

was responding to the kind of massive constitutional violations that have prompted proper remedial legislation, that it considered the adequacy of state remedies that might have provided the required due process of law, or that it sought to limit the coverage to arguably constitutional violations," the court struck down the CRCA as "an improper exercise of Congressional legislative power." *Id.* at 607.

Eleven years later, in *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Georgia*, 633 F.3d 1297 (11th Cir. 2011) ("*NABP*"), the Eleventh Circuit reached a similar outcome on slightly different legal grounds. *NABP* also involved a copyright action against a university board, and two of the holdings in that case are relevant here. First, the Eleventh Circuit noted that the "legislative history of the CRCA makes clear that Congress intended to abrogate state sovereign immunity under its Article I powers" in passing that law, *id.* at 1313, and while this may have been a valid basis for abrogation at the time the CRCA was enacted, the Supreme Court later established in *Seminole Tribe* that Article I cannot support a congressional abrogation of state sovereign immunity. *See id.* at 1313-15. The court thus held that the Copyright Clause of Article I,[12] which was the stated constitutional basis for the CRCA when it was enacted, could no longer justify an abrogation of

---

[12] Courts have used both the terms "Patent Clause" and "Copyright Clause" to refer to Section 8, Clause 8 of Article I, which empowers Congress "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

state sovereign immunity. *See id.* at 1315. Second, the Eleventh Circuit held that the Fourteenth Amendment could not itself justify the CRCA's abrogation of state sovereign immunity. The court explained that Congress can validly abrogate state sovereign immunity under Fourteenth Amendment in two ways: either by "creat[ing] private remedies against the States for *actual* violations" of the Fourteenth Amendment, or by enacting "prophylactic legislation which deters or remedies [Fourteenth Amendment] violations ... even if in the process it prohibits conduct which is not itself unconstitutional, so long as there [is] a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* at 1315-16 (emphasis and alterations in original) (internal quotation marks and citations omitted). The latter ("prophylactic") option, which was at issue in *Chavez*, was not raised in *NABP*. The question before the court in *NABP* was therefore whether the plaintiff—a nonprofit corporation which alleged that a public university and affiliated parties had appropriated its copyrighted materials—had alleged an "actual violation" of its Fourteenth Amendment due process rights. The Eleventh Circuit concluded that it had not. *See id.* at 1315-19.

*Chavez* and *NABP* thus reached similar outcomes on different doctrinal grounds. The Fifth Circuit's decision in *Chavez* had to do with whether there was enough evidence in the CRCA's legislative history of a pattern of state-committed copyright violations to justify the law's abrogation of state sovereign immunity. In

*NABP*, by contrast, the Eleventh Circuit analyzed whether the plaintiff's allegation of copyright infringement was in itself an allegation of a due process violation by the state, and ultimately concluded that it was not. In other words, *Chavez* analyzed the CRCA as a prophylactic remedy for a societal problem, while *NABP* analyzed the CRCA as a vehicle for remedying state actions that are themselves violations of a plaintiff's constitutional rights. Both courts concluded that it was not a valid exercise of congressional power. And while these are the only two circuit courts that have weighed in on the CRCA's constitutionality thus far, various district courts have reached the same results, including several within the Sixth Circuit. *See, e.g., Campinha-Bacote v. Regents of the Univ. of Michigan*, No. 1:15-cv-330, 2016 WL 223408, at *3 (S.D. Ohio Jan. 19, 2016) (noting that "numerous courts have held that the CRCA was passed pursuant to Article I powers and thus was not a valid abrogation of the states' Eleventh Amendment immunity" and concluding that "Congress did not validly abrogate the states' Eleventh Amendment sovereign immunity [in the CRCA] and that the statutorily proscribed conduct, as explained in [*NABP*], does not simultaneously and independently violate a constitutional guarantee protected by the Fourteenth Amendment") (collecting cases); *Coyle v. Univ. of Kentucky*, 2 F. Supp. 3d 1014, 1017–19 (E.D. Ky. 2014) (holding that the CRCA was passed pursuant to the Copyright Clause of Article I and thus cannot validly abrogate state Eleventh Amendment immunity); *Jacobs v. Memphis*

*Convention & Visitors Bureau*, 710 F. Supp. 2d 663, 678–82 (W.D. Tenn. 2010) (same). A court in this District recently did the same in *Wolf*, rejecting the plaintiff's attempt to distinguish *Chavez* and declining her "invitation to examine the Copyright Act ab initio." *Wolf*, 2016 WL 7048812, at *5 (E.D. Mich. Dec. 5, 2016).

This Court is not aware of any cases in which a court has upheld the CRCA against a challenge like those that were made in the cases discussed above. Moreover, Plaintiff has not presented the Court with contrary legal authority, evidence of a pattern of state university copyright violations, a colorable argument that his due process rights were violated, or any other reason not to follow the sound reasoning in *Chavez*, *NABP*, *Wolf*, and the other cases that have invalidated the CRCA's purported abrogation of state sovereign immunity.

### ii.    *DMCA claim (Count II)*

The same analysis applies to Plaintiff's DMCA claim. The CRCA purports to abrogate Eleventh Amendment immunity based on violations "of any of the exclusive rights of a copyright owner provided by [17 U.S.C. §§ 106-122], for importing copies of phonorecords in violation of [17 U.S.C. § 602], or for any other violation under this title." 17 U.S.C. § 511(a). The CRCA thus includes the DMCA, 17 U.S.C. § 1202, within its scope. None of the authorities discussed above that have invalidated the CRCA have noted any basis for distinguishing between the DMCA and other provisions of Title 17, so the CRCA cannot validly abrogate Eleventh

Amendment immunity from liability under the DMCA.

Plaintiff has cited no other statute that purports to abrogate state sovereign immunity as to the DMCA, nor does the text of the DMCA itself demonstrate any congressional intent to that effect. SVSU and thus Defendant Canale are immune from liability on the DMCA claim under the Eleventh Amendment as well.

## IV. CONCLUSION

Because Plaintiff named Defendant Canale as a defendant in this action after the governing limitations period expired, and since the amended pleading in which he did so does not relate back to the date of the original pleading under Rule 15(c), this action is time-barred. Even if it were not, Defendant Canale is entitled to qualified immunity insofar as he is sued in his individual capacity, and Eleventh Amendment immunity insofar as he is sued in his official capacity. Accordingly, the Court hereby GRANTS Defendant's Motion for Judgment on the Pleadings.

IT IS SO ORDERED.

Dated:  March 15, 2018                         s/Paul D. Borman
                                               Paul D. Borman
                                               United States District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 15, 2018.

                                               s/D. Tofil
                                               Deborah Tofil, Case Manager

45